GEORGE H. BRYAN, administrator, plaintiff in error, *vs.*
MYRA T. HICKSON *et al.*, defendants in error.

1. The State Courts will not enjoin persons from proceeding in the United States Courts, nor will the United States Courts enjoin suits in the State Courts, except to enforce obedience to process already issued against suitors already in Court.  (R.)

2. A Court of Equity will not entertain a bill to marshal assets, on the ground that there are numerous claims against the estate, or that the estate is insolvent, or that the claims are charged to be complicated. There must be claims of doubtful right to be settled, or danger of serious injustice or other complications, in which the law, under the ordinary legal tribunals is incompetent to do adequate justice, and this must appear from the facts set forth, before a Court of Equity will interfere.

Bill to marshal assets, etc.  Demurrer.  Before Judge
JOHNSON.   Harris Superior Court.   October Term, 1869.

This bill, filed in January, 1868, was demurred to for want
of equity, the demurrer was sustained, and that is assigned
as error.   Its averments were as follows:   Bryan, in 1864,
was appointed administrator of Thomas Hickson, deceased.
The only heir is Myra T. Hickson, of Bibb county, Georgia.
The estate was regularly appraised at $285,594 00 in Confederate currency.   The estate consisted of twenty-four hundred acres of land, seventy-seven slaves, and various personal
property and assets, specified.   Because of the perilous times,
Myra T., in August, 1865, to induce Bryan to become administrator, agreed to allow him to take, as extra compensation
for his services as such administrator, four per cent. upon the
inventory after deducting the value of the slaves.   He proceeded to discharge the liabilities of the estate, and regarding
it as perfectly solvent, in some instances he took up demands
against it by giving therefor Myra T.'s note, with himself as
her accommodation endorser, without any benefit to himself.
On the 26th of December, 1864, he so took up a demand
against the estate in favor of Elizabeth and Amanda Davidson for $1024 00, besides interest.   Upon this note said
Elizabeth sued in Harris county, had that case marked dis-

missed, without paying the costs, and only to vex and harrass Bryan, sued upon it in the Circuit Court of the United States for the Southern District of Georgia, in the name of John W. Davidson, of Alabama, who is not the *bona fide* owner of said note. He hopes to have said suit enjoined, and on legal grounds to dismiss it, having had all necessary pleas filed. When this is done Elizabeth and Amanda will again sue him unless restrained. There are other claims which fall under similar principles of equity, which should be brought before the Court with suitable explanations that equity may be done. Thomas Gordon, of Catoosa county, as administrator *de bonis non* of James Simpson, obtained a decree against Bryan as such administrator, to enforce the vendor's lien for the purchase-money of the most valuable portion of the lands of the estate for about $3,000 00, and has begun suit on the notes given for the purchase-money aforesaid, to enable him to recover his *pro rata* share of what may remain unpaid when said lands shall have been sold under said decree.

Bryan did not reside on the plantation, Myra T. did, and so, for some time, did one Hanlon. He deceived her, and married her while he had another wife, and he and one Blackman consumed part of the estate, for which he asks they may account. Hanlon has fled to parts unknown; Myra T. has been divorced from him, and Blackman died in Texas, and his estate is unrepresented. But these expenditures were not beyond Myra T. Hickson's position and station in society, and were afterwards charged to her in her year's allowance. This allowance, her dower, which was assigned, and emancipation of slaves, reduced said estate. Lee obtained a judgment against Bryan as administrator while he supposed the estate was solvent, and seeks to enforce that judgment, and a suit is pending against him by McGehee for $175 00. (A schedule of debts, and the description of them are exhibited.) Upon consultation with Lee and other creditors, Bryan suggested the necessity of filing a bill to marshal the assets; Lee said they thought if he would sell the property on credit it would bring enough to pay all, and they would wait. He did so sell, selling much of the property to

Bryan *vs.* Hickson *et al.*

Myra T.   Owing to the decline of cotton and other unforeseen causes, he can not raise money from said sales, and all the proceeds and assets will not pay all the debts.

He prayed that said Elizabeth and Amanda, and other creditors in like situation, be enjoined, and that the notes given to them be decreed to be demands against the estate only, that Gordon be enjoined on his common law action, that all other creditors be enjoined from further proceedings against him, that they all answer as to the nature and dignity of their demands, etc., that the assets be marshaled, and that he be instructed how to pay them out, and he be allowed his compensation and solicitor's fees, and then be discharged from further liability.

The inventory of appraisement, sale bills, and his returns, were all exhibited.   The inventory, made the 15th of October, 1864, footed up $285,594 00.   Of this amount $140,-755 00 was for the slaves, $34,000 00 is for land, and the balance was for the usual personal property of a wealthy farmer.   His returns showed that up to July 1st, 1866, he had received in cash for said estate $4,635 96, all of which he had paid out since the war; that from July 1st, 1866, to January 1st, 1868, he had received $3,730 24, and after taking out his payments and commissions, he owed the estate in cash $2,892 05.   The exhibited claims against the estate footed up $6,266 45.   They accrued in 1859 and 1864, and the intermediate years.   Of these, the demand of Sampson's estate was $3,000 00.   Lee's judgment was $1,575, with interest from October, 1867.

B. H. BIGHAM, by THOS. WHITAKER, for plaintiff in error.

RAMSEY & RAMSEY, H. L. BENNING, L. T. DOWNING, for defendants in error.

McCAY, J.

We have carefully read this bill, and are unable to see any error in the judgment of the Court below in sustaining the demurrer.   So far as the complainant can get any relief he

has his remedy at law. He pleaded to each of the suits the same facts he sets up in his bill, and the remedy at law is just as complete as it is in equity. If by his own fault he has gotten into trouble, neither equity nor law will relieve him, and if his difficulties are such as excuse him, a Court of Law can do it as well as a Court of Equity. Various Acts of the Legislature, passed since the emancipation of the slaves, protect administrators in having made payments which, as it turned out, should not have been paid. If his case is covered by those Acts, he can plead them at law when it is attempted to make him personally liable.

1. As to the injunction prayed, to prevent a suit in the Circuit Court of the United States, the State Courts will not enjoin persons from proceeding there, nor will the United States Courts enjoin suits in the State Courts, except to enforce obedience to process already issued against suitors already in Court. 2 Story's Equity, sec. 900, and cases cited.

2. To make out a case for marshaling assets, there must be conflicting rights of doubtful character to be settled, producing danger to the administrator, or some complication, which a Court of Law has not the machinery to manage. This case presents no such difficulties, and equity has no jurisdiction over it. Judgment affirmed.